## MATLOCK *vs.* THOMPSON ET AL.

1. By going to trial in a proceeding for a forcible and unlawful detainer without objection to the complaint, defects of form are cured and cannot be insisted on in this court.
2. An allegation that the defendant "forcibly and unlawfully detains and keeps possession" of the premises, "detaining and holding the same by such words, circumstances, or actings, as have a natural tendency to excite fear and apprehension of danger," is a sufficient allegation, under the statute, of a forcible detainer.
3. Neither is the mere refusal of the defendant to deliver possession of the premises, when demanded, nor his declaration to a third person that he had gotten possession of property which was his own, and he intended to hold it if he could, sufficient evidence of force to support the complaint for a *forcible* detainer.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

STEWART, for the plaintiff in error.

W. G. JONES, for the defendants.

PARSONS, J.—This suit, in which the defendants in error were plaintiffs below, was commenced and prosecuted under the act "to provide a more efficient remedy in cases of unlawful entry and detainer in the city of Mobile," approved March 3, 1848. The plaintiffs below recovered before the justices of

the peace against Matlock alone, and he brought the cause to the Circuit Court of Mobile by *certiorari*, where there was a trial *de novo* on the merits, according to the statute, without any objection to the complaint, process, or other proceedings before the justice.    The defendant below might have demurred, under the 7th section of the statute, to the complaint, in the Circuit Court, as if it had been an original cause there, but he omitted this, and consequently waived every objection to the form.— Wright v. Lyle, 4 Ala. 112.

2. We think there is a cause of action stated in the complaint; the precise allegation is, that the plaintiffs below "were seized in their own *demesne* as a fee, and in possession of" &c., describing the land, "and being so possessed, on the day and year aforesaid, they so continued in possession of the premises until" the defendants, whose names are mentioned, with the date and venue, "unlawfully entered thereupon, and forcibly and unlawfully detain and keep possession of the lands, appurtenances and tenements, detaining and holding the same, by such words and circumstances, or actings, as have a natural tendency to excite fear and apprehension of danger."    In Huffaker v. Boring, 8 Ala. 87, which was an action of forcible entry and detainer, it was determined that an allegation in the complaint similar to the one just quoted, beginning with the words, "and forcibly and unlawfully detains and keeps," was sufficient.    The act of 1848 refers to and adopts mainly, the general statute of 1805, (Clay's Dig. 250,) which gives the action of forcible entry and detainer.    By the 2d section of that act, a party may have that remedy although the entry was peaceable, if followed by certain acts or indications of force.    The 3d section applies more fully to a lawful or peaceable entry, after which there is a holding unlawfully and forcibly, and that section declares a holding or detainer to be forcible by any words or circumstances, &c., that will make an entry forcible.    The 5th section provides for the case of unlawful detainers.    The 7th section prescribes the proceedings to be had when there is a complaint, specifying the lands, &c., so forcibly entered upon and detained, or forcibly or unlawfully detained; and the pleas, by another part of the act, are the same in all the cases, without any material difference in the subsequent proceedings.    There is enough alleged, as may be seen from the language of the complaint and the statutes to

which we have adverted, to constitute a cause of action. And if there is any question as to the right to join several causes in the same complaint, it is too late to make it for the first time on error, and after verdict.

3. The plaintiffs, on the the trial in the Circuit Court, proved that they had possession of the lot in controversy, by themselves and their agents, from 1845 until the 7th January 1849, when Matlock went into possession. A carpenter in the employ of the plaintiffs had a few days previously left the house with the windows and doors fastened, the latter by a piece of plank nailed across it outside, the same being untenanted at the time. The house was closed as mentioned, after the carpenter had made some repairs for the plaintiffs, and at their request. There was other evidence of the possession of the plaintiffs, but it is not necessary to state it. It does not appear how Matlock got into possession, but he told one of the witnesses that he obtained possession; that the property was his, and he intended to keep it if he could. On the trial Matlock applied for a continuance on the ground of the absence of the witnesses, by whom he expected to prove that the house and premises were open, unoccupied, and the doors not locked or fastened; that it was empty, and to all appearance, the premises abandoned, that he entered peaceably and quietly, no one being there and the premises vacant; that he entered, claiming them as his own, or having a right to the possession. This was admitted to be read as evidence in lieu of the absent witnesses.

The plaintiffs' witnesses, on cross examination, proved, that previously to the possession of the plaintiffs in 1845, Matlock and his wife, and the other defendants, were in possession and had been for some time, and that they got possession from one Nicholas, who had for a long time before been in possession. This is the substance of all the evidence, as we understand the bill of exceptions, that went to the jury, except a demand of possession and simple refusal, before this suit was brought. We think the plaintiffs proved their possession sufficiently, but it is necessary to advert to some of the opinions of the Circuit Court upon the evidence. Matlock's counsel requested the court to charge the jury, that the question, as to how Matlock entered the house, was not the question before them, and that, to authorise a finding for the plaintiffs (below,) it must appear from

the evidence that there was a holding of the possession or detaining by force; that a mere demand of possession by the plaintiffs, and refusal to deliver the possession by the defendant, would not be sufficient evidence of a forcible detainer; that proof that defendant said to a stranger to the parties and in conversation with him, plaintiffs below not being present, that he had got possession of the property, which was his own, and that he intended to hold it if he could, was not sufficient evidence of forcible holding to sustain the complaint. But the court refused to give any of these charges, except the first, to wit, that a holding by force was necessary, which was given, with this qualification, that a demand of the possession of the premises by the plaintiffs and refusal by the defendant to surrender was sufficient evidence of forcible detaining to support the complaint of forcible detainer, and that no farther proof of force was necessary to satisfy that allegation of the complaint, to all of which the defendant below excepted.

I think the whole opinion given in the qualification just stated is erroneous. The circuit judge was, perhaps, misled by the language of two cases decided by our predecessors, in which, however, I do not think the precise question arose or was intended to be decided. The first of the cases is Wright v. Lyle, 4 Ala. 112. It is stated in the head note that a possession peaceably acquired will be converted into a forcible and unlawful detainer, by a refusal to yield the premises on demand and forcibly retaining them.

In that case the complaint stated that the defendant unlawfully entered and forcibly and unlawfully detains and keeps possession of said lands and appurtenances, &c. On the trial, the defendant asked a charge "that as there was no proof introduced to show that the defendant manifested any force in word or action, they could not find the defendant guilty of a forcible entry or detainer, or of a forcible detainer, which charge the court refused to give." In reference to this charge and another, it was observed by the judge who gave the opinion in this court —"What the evidence was in this case we are not informed, as it is not set out in the record," and then he mentioned what was stated in the complaint, and added, "if, therefore, the defendant obtained peaceable possession of the premises, his refusal to yield the possession on demand, and forcibly retaining it,

would be a forcible detainer." Now, it will be observed, that the attorney before the justice of the peace, who asked the charge, assumed that there was no proof of force. If there was really no proof of the kind, the refusal of the justice to give the charge was fairly before this court. But it was observed in this court: "What the evidence was in this case we are not informed." That was saying in effect, that it does not, therefore, appear, that the justice erred in refusing the charge requested, because it was abstract, so far as the record shows. But the court refered to the complaint, which, among other things, stated a forcible detainer, and said, "if, therefore, the defendant obtained peaceable possession of the premises, his refusal to yield the possession on demand, *and forcibly retaining it*, would be a forcible detainer." So that the court here did not say or decide that a refusal to yield possession on demand would be a forcible detainer, but the "forcibly detaining it" was also necessary to constitute a forcible detainer, and the kind or quantum of the force was passed over, as it was not necessary in that case to mention them. That case, then, as a support to the opinions of the circuit judge in this case, amounts to nothing.

The next is the case of Huffaker v. Boring, 8 Ala. 87, which was a case of forcible entry and detainer, in which the complainant, after stating the forcible entry and detainer of the premises, alleged the "detaining and holding the same, by such words, circumstances or actings, as had a natural tendency to excite fear, or apprehension of danger." It was in respect of the complaint, if to any thing in the reported facts of the case, that the court observed: "In respect to the quantum of force necessary to sustain the proceeding for a forcible *entry and detainer*, it has been held that the bare entry on the possession of another (with or without title,) without his consent is, in contemplation of law, a forcible entry,"—citing 4 Bibb's Rep. 308, 420 ; 3 Marsh. 347; and adding: "So, a mere refusal to restore the premises, is in itself force, within the statute."—Citing Ewing v. Bowling, 2 Marsh. 25, and Swartswelder v. U. S. Bank, 1 J. J. Marsh. 44. Now, in the opinion from which this extract is made, our predecessors only stated what had been held in Kentucky, and cited the cases. The last of those cases, (Swartswelder v. U. S. Bank, 1 J. J. Mash. 44,) gives the clue to them all, as it ap-

Matlock v. Thompson et als.

pears they were founded on a Kentucky statute, differing most essentially from ours, and also from the English and New York statutes.

The Kentucky statute declares, as the case in 1 J. J. Marshall shows, "that the forcible entry meant by it is an entry against or without the will of the individual in possession." And the court said, " if then an entry without the consent of the possessor is a forcible entry, a detention against his will must be a forcible detainer." The first branch of the Kentucky doctrine was, therefore, in obedience to an express statute, and the second resulted from it.

The complaint in this case was of a forcible and unlawful detainer. There was no evidence of the latter. The only question is, whether the bare refusal of the defendants to give possession, when demanded, was such force as to support the complaint of a forcible detainer. We think it was not under our statute.—See the People ex rel. Kline v. Rickert, S Cow. 226, and 13 Johns. 340. We also think there was error in refusing the charge requested in relation to what the defendant said to a stranger in conversation. It appears that Matlock offered in evidence, to prove his right of entry, the decree and proceedings of a suit in chancery, in which he and other defendants were complainants and John P. Nicholas was defendant, which was rejected by the court and he excepted. The bill of exceptions was prepared, it appears, with a view of attaching a transcript of that suit to it, but that was not done. The transcript does not appear. We, therefore, cannot determine whether there was error in rejecting it or not. But for the other errors, the judgment of the Circuit Court is reversed and the cause remanded.