PERRYMAN &c. *vs* BURGSTER.

1. An infant plaintiff is not liable for costs, unless he waive his plea of infancy, or fail to sustain it, or it be not available in law, as where he is sued for tort—his *prochien ami* is. A guardian *ad litem* is never chargeable with costs.

2. Proceedings in forcible entry and detainer, before a justice, and others of a similar character, when removed by *certiorari*, from the justice to the Circuit court, are to be tried upon transcript sent up, and not by a re-investigation of the matters of fact.

3. Transcripts, in such cases, can not be amended in the Circuit court, upon motion, sustained by affidavits, showing the neglect of the justice to record fully, the matters occurring on the trial.

4. Where a justice has omitted to perfect a record, the correct practice is to move for a rule on him, to make certain amendments shewn to be material, and if he fail, then to shew cause—and if the cause shewn, be insufficient, a *mandamus* should be awarded.

5. A paper, purporting to be a transcript, as a return to a *certiorari*, should not be received, unless it be certified by the justice, and returned with the writ.

6. It is no available objection, on a case of forcible entry and de-

tainer, brought up from a justice by *certiorari*, that the process was issued by one justice, and the case tried by another. Their powers are co-extensive.

Error to the Circuit court of Wilcox county.

Proceedings in forcible entry and detainer, before a justice of the peace.

The complaint in this case, was made to Samuel Pitts, one of the justices of Wilcox county, and stated that complainant, Joseph Burgster, was possessed of a certain house and lot, with the appurtenances, in Daletown, in said county, to wit, lot number one, in block number sixteen, in the plan of said town—formerly in the possession of one Mrs Marsh—for a term of years, then and to come, unexpired : and, being so possessed, one Bryan Marsh, junior, and one Stephen Marsh, on the third of July, eighteen hundred and thirty-four, with force and arms, and strong hand, unlawfully entered, and him, said complainant, did expel and put out, and had since kept out : wherefore he prayed process, &c.

The process was returned to J. Vincent, another justice of the same county, and on the trial of the case, defendants plead infancy, when on proof of the absence of their father and natural guardian, from the State, Alexander Perryman was appointed their guardian *ad litem*.

Defendants then plead not guilty, and offered as evidence, the record of a case, tried in the Circuit court, wherein Bryan Marsh was plaintiff, and Albert G. Perry, defendant—which was rejected, on the ground, that Bryan Marsh and Albert G. Perry were not parties in the cause then to be tried, and that the record was informal. Defendant also proposed to prove by Joseph S. Ryan, that the title to the premises was in Bryan Marsh—which evidence was rejected, on the ground, that the statute declared, that the estate, or merits of the title, should in no wise, be inquired into,

on a complaint of forcible entry and detainer: and thereupon came a jury of good and lawful men, who, having heard the evidence and argument, said they found the defendants guilty. Whereupon, it was considered by the court, that said Joseph Burgster be restored to and put in possession of the messuage and appurtenances, and that the guardian pay the costs of the inquisition, &c.

From this judgment, defendant, Perryman, appealed to the Circuit court, &c., and obtained his writ of certiorari, &c.

And at the September term, eighteen hundred and thirty-four, the plaintiff in error in the Circuit court, moved for an alias certiorari to the justice, requiring him to amend the record ; and assigned for error—

1. That the justice erred, in appointing Alexander Perryman guardian, *ad litem*, for Bryan Marsh and Stephen Marsh.

2. The justice erred in rendering judgment for costs, against Alexander Perryman.

3. The justice erred, in excluding the evidence of J. S. Ryan.

And at the Spring term of the Circuit court of said county, eighteen hundred and thirty-five, plaintiff moved for a *pluries certiorari*, and to amend the return of the justice, by certain affidavits filed, and for a trial *de novo*, which motions were severally overruled : and thereupon, the record being inspected and fully understood by the court, it seemed to the court, that there was no error in the record,—therefore it was considered by the court, that the judgment of the justice be affirmed ; and that said Joseph Burgster do recover of said Alexander Perryman, guardian, &c. his costs, therein expended; and that a writ of *procedendo* should issue to the justice. To all of which plaintiff excepted, &c.

There were three affidavits, to wit:

Joseph S. Ryan swore that he was called as a wit-

ness for defendants, on the trial before the justice, and offered to prove an original possession of the premises in Bryant Marsh, senior, the father of defendants, so that the possession of Burgster was not a rightful one, at the time of the offence complained of. Affiant offered to prove nothing concerning the titles to the premises, &c.

The affidavit of Elihu Lockwood stated, that he acted as counsel for defendants, on the trial before the justice; and that defendants offered to prove by Joseph S. Ryan, a chain of possession to the premises, for a number of years previous to the suit; and that six or eight months previous to the suit, Bryant Marsh, senior, under whom defendants claimed the right of possession, was in actual possession, and that he had never relinquished the same; and that during the six or eight months previous to the suit, neither the plaintiff, or the person under whom he claimed, had had either lawful or peaceable possession,—all of which was refused by the court; and that no attempt was made, to prove any thing concerning the legal title, &c.

The affidavit of Chauncey Powers stated, that he was present at the trial, before the justice, and that a motion was made by defendants to quash the summons, and that Ryan was offered to prove a possessory right to the premises, in the defendants, through their father, &c.

The bill of exceptions stated, that when the cause was called, the plaintiff in error suggested to the court, that there was no return to the certiorari, and thereupon moved for an *alias* certiorari, to perfect the record: That the counsel for defendant in error produced what purported to be a transcript, signed J. Vincent, J. P. [seal.] and dated eighth May, eighteen hundred and thirty-five, which they stated was among the papers of the cause. It was not shewn when or by whom it was filed,—it was in no manner

attached to the certiorari, and there was nothing to identify the transcript produced, with the certiorari, other than the contents of the papers. Plaintiff in error urged, that these matters exhibited no sufficient return to the certiorari, and moved for a *pluries*.—— The court determined the return sufficient, and overruled the motion.

The counsel of plaintiff in error, then submitted the affidavits of J. S. Ryan, E. Lockwood, and C. Powers, as a part of the bill of exceptions, together with the petition of the original certiorari; and thereupon moved the court to amend the record, according to the facts disclosed, to wit, that there had been an offer made, by the defendants, before the justice, to prove a rightful possession by them, of the premises, which motion was overruled. Plaintiff in error then moved the court, on the affidavits, for a rule on the justice, to shew cause, why the record should not be amended, according to the facts of the case, especially as to the proof of possession offered and rejected; which motion was overruled by the court.

The plaintiff in error, then moved for a trial *de novo*, in the case, which motion was also overruled. To all of which plaintiff excepted, &c.

The plaintiff assigned for error, in this court——

1. That the Circuit court erred, in refusing to reverse the judgment of the justice, for the reasons assigned in that court.

2. The court erred, as stated in the bill of exceptions.

3. The court erred in refusing to award a *pluries* certiorari, as prayed.

4. The court erred in receiving the papers found in the file, as a part of the record, as they were not a return to the certiorari.

*Ellis* and *Peck*, for the plaintiffs in error.
*Porter*, contra.

COLLIER, C. J.—The record informs us, that the defendant in error made complaint before Samuel Pitts, a justice of the peace, of Wilcox county, against the plaintiffs, of a *forcible entry and detainer*, made by the n, in and of a house and lot, situate in Daletown, in that county: that process was issued, as the statute directs in such cases; and that Alexander Perryman, being appointed their guardian, *ad litem*, a trial was had before John Vincent, a justice of the peace of Wilcox county, on the plea of not guilty, when a verdict was found and judgment rendered, in favor of the defendant in error, for the recovery of possession, and also against the guardian, *ad litem*, for costs.

The plaintiffs then prayed for, and obtained a *certiorari*, for the removal of a perfect transcript of the record and proceedings of the case, to the Circuit court, for revision. At the return term of the *certiorari*, upon a suggestion, that the transcript was imperfect, which accompanied it, an *alias certiorari* was asked for, and awarded. At the succeeding term of the court, the plaintiffs moved the court for a *pluries certiorari*, and to amend the record, by certain affidavits filed, and for a rule against the justice, requiring him to amend his return. All of which was overruled. The plaintiffs then demanded a trial *de novo*, which was also denied, and they were forced to join in error.

The plaintiffs then suggested to the court, that there was no return to the *alias certiorari*.

The defendant's counsel then produced a paper, purporting to be a transcript, signed J. Vincent, J. P. [seal.]—and dated the eighth May, eighteen hundred and thirty-five, which they stated, was among the papers of the cause. It was not shewn when, or by whom it was filed.—It was in no manner, attached to the *certiorari*; and there was nothing to identify the transcript produced, with the *certiorari*, other than the contents of the papers: and, notwithstanding the ob-

jection of the plaintiffs, that this was no return, the court determined it to be sufficient. To all which decisions, the plaintiffs excepted. The questions of law arising upon this bill of exceptions, as well as those raised in the Circuit court, are here assigned for error.

Several of the errors assigned in the Circuit court are not sustained by the record, and it will, therefore, be unnecessary to notice them.

It has been so often decided, that it may now be considered the settled law, that cases of the character of the one at bar, when removed by *certiorari*, from a justice of the peace, to the Circuit court, are to be tried upon the transcript of the proceedings sent up, and not by a re-investigation of the matters of fact before the jury. There is, therefore, no error in the refusal of the court, to accord to the plaintiffs, that description of trial.—*McDonald vs Gayle;* *Dunham vs Carter and Carroll.*†

In regard to the motion in the Circuit court, to amend the transcript upon affidavits, shewing the neglect of the justice, to record fully, the matters occurring on the trial, which the statute requires to be recorded, we think it was properly denied. The transcript should be sent up by the justice, correctly, and though it be inaccurate, it can not thus be amended.

The correct practice, when the justice has omitted to perfect the record, it seems to us, is to move the Circuit court for a rule against him, to make certain amendments to his minutes, which are shewn to the Court, by affidavit, or otherwise, to be material omissions; or if he fail or refuse to make such amendments, then shew cause therefor, at the return of the rule.— If the cause shewn be deemed sufficient, the rule should be discharged,—if insufficient, a peremptory mandamus should be awarded. We find no express

*Alabama Reports, 98.    †2 Stew. Rep. 496.
6p                14

authority for this practice, but think it results from the analogy of the law. If a judge refuses to seal a bill of exceptions, he may be compelled, by *manda-mus* to do so.

In the case before us, the matters required to be entered upon his minutes, by the justice, to wit—" the admission of evidence, objected to, and the rejection of evidence offered, the reason of such admission or rejection," &c., are usually, in the higher courts, made part of the record, by bill of exceptions : here, the justice is required, without the agency of the parties, or their counsel, to record them himself. The analogy being so just, we think similar means should be allowed, to enforce a performance of duty, in either case—the more especially to prevent a failure of justice.*

In New York, it is a frequent practice, where cases are brought up, by *certiorari,* from a justice of the peace, if his return is objectionable, to award a rule upon the justice, to amend his return—*Rudd vs Baker;*† *Wilson vs Fenner;*‡ *Simpson vs Carter.*§

The Circuit court erred, in receiving the paper, purporting to be a transcript, as a return to the *alias certiorari.* The mandate of the writ required that the transcript to be sent up, should be certified by the justice, and returned together with the writ. It was not attached to the writ, nor was it certified ; but was merely found in the papers of the case : nor was it even shewn, that it was intended as a return. There was, then, no authority for receiving it as such.

It is further objected, that the judgment rendered by the justice of the peace, as well as that of the Circuit court, against the guardian *ad litem,* for costs, is erroneous.

---

*For the office of a mandamus, and cases in which it is a proper remedy, *vide* Willcock on Municipal Corporations, 354—14 Law Lib.
†7 Johns. Rep. 548.
‡ 3 ib. 439.                    §5 Ib. 350.

An infant plaintiff is not liable for costs,—his *pro-chien ami*, who voluntarily represents him, is charge-able; but an infant defendant, where he waives his plea of infancy, or fails to sustain it, or if it be not available in law, always pays costs.*

Where an infant is sued for a tort, his minority will not avail him; yet it is the duty of the court, in such case, to assign him a guardian, to conduct his defence; and the power to make such an appointment, belongs to all courts, however limited their jurisdiction.† Some friend of the infant defendant is most usually appointed to that office—yet, if there be no friend designated, or none esteemed of sufficient discretion, it is compe-tent to appoint some ministerial officer of the court.

In *Muir's Executors vs Stuart's Representatives*,‡ it was determined to be the correct practice, by analo-gy to that prevailing in the English Chancery, to appoint the clerk and master in equity, a guardian, *ad litem*, to defend a suit brought there against infant defendants. The court also remarked, that the clerk and master can not refuse this trust, but is bound to perform the duty it imposes, which can not result in injury to himself. This declaration implies that he is not liable for costs—for if he could be charged, he might be injured.

The true ground of distinction between the *prochien ami* of an infant plaintiff, and the guardian of an in-fant defendant, we take to be this: the one voluntari-ly comes into court, and makes himself a party of re-cord, while the other, without his own agency, is made such, by the court. This distinction does not always hold good, in point of fact, for the guardian, *ad litem*, sometimes solicits the appointment; yet the court, in some instances, exerts a coercive authority, and as in

---

*Reeves's Domestic Rel. 267.   †8 Johns. Rep. 418.
‡1 Murphey's Rep. 440.

these, he is not chargeable with costs, for the sake of uniformity, he is held not to be liable in any case. The judgment for costs, against an improper person, does not authorise an entire reversal of the judgment, but a mere correction by reversing and rendering, if there be no other error upon the record; and as this was the only one pointed out in the Circuit court, that court could not have reversed and remanded the case; but should merely have corrected it, in the manner we have indicated.

In the refusal of the Circuit court, to award a *pluries certiorari*, as moved by the plaintiffs, there is no error. It was a motion which addressed itself to the discretion of the court, and the propriety of granting it, must have depended upon circumstances, of which a revising court could not well be placed in possession.

It was no available objection, that the complaint was made to, and the process issued by one justice, while the case was tried before another. The powers of each were co-extensive.* But even if this objection had been allowable, it was waived, by the failure to make it at the trial.

This view disposes of the case, and the result is, that the judgment must be reversed, and the cause remanded.

---

*4 Stewart & Porter, 125.