## MAHAN vs. LESTER.

1. Before the passage of the act of 1850, (pamphlet Acts 81,) in cases of forcible entry and detainer, unlawful detainer, &c., removed into the Circuit Court by *certiorari*, a trial must have been had on an assignment of errors on the record sent up by the justice of the peace, and not *de novo ;* and if the party whose duty it was to assign errors, failed or refused to do so, the judgment of the justice must have been affirmed.

2. The act of 1850, which requires a trial *de novo* to be had in such cases, does not apply to cases which had been removed to the Circuit Court, and which were there pending at the passage of the act.

3. Where the petition for a *certiorari* had been presented to the Circuit Judge, and his fiat obtained, and these had been filed with the clerk of the Circuit Court before the passage of the act, the jurisdiction of that court attached, and the act of 1850 cannot apply to the case, although the bond required by the judge was executed, and the writ of *certiorari* issued, after the passage of the act.

4. When a trial *de novo* is improperly had in the Circuit Court, in a cause which was there pending before the passage of the act of 1850, the judgment founded upon the verdict of the jury will be reversed in the Appellate Court, although the plaintiff in error is the party who sued out the *certiorari*, and who failed to assign errors in the Circuit Court.

ERROR to the Circuit Court of Tallapoosa.

Tried before the Hon. E. Pickens.

Lester commenced a proceeding, under the statute, against Mahan, before a justice of the peace, for the unlawful detainer of the possession of certain lands described in the proceedings; the jury, trying the case before the justice, rendered a verdict against the defendant, and judgment was given accordingly. On the 5th of February, 1850, the defendant exhibited his petition, for *certiorari*, to the Judge of the Ninth Judicial Circuit, who, by his *fiat* without date, ordered the *certiorari* to issue. This petition and fiat appears, by the memorandum of the Clerk of the Circuit Court, to have been filed in his office on the 9th day of February, 1850, the bond required by the fiat to be given was executed on the 23d February, 1850, and the writ of *certiorari* was issued on the same day. When the case was called for trial in the Circuit Court, at the Fall Term, 1850, Lester moved to dismiss the case for want of an assignment of errors by the party suing out the writ of *certiorari*, but the court overruled the motion, and directed the cause to be tried *de novo*, notwithstanding the objection of Lester's counsel.

The parties then, under the order of the court, proceeded to try the case *de novo*, when Mahan took several exceptions to the ruling of the court, as shown by a bill of exceptions in the record. The jury returned a verdict for Lester, the plaintiff, (as the case stood on the docket,) and a judgment was given against him for costs, but it appearing that he had previously surrendered the possession, no writ of restitution was ordered.

The case is brought to this court by writ of error, sued out by Mahan, and he assigns for error the matters set forth in the bill of exceptions, and in the record of the Circuit Court.

L. E. PARSONS, for plaintiff in error.

FALKNER & RICE, *contra*.

LIGON, J.—The rules regulating proceedings in the Circuit Court, in cases of forcible entry and detainer, brought before it by *certiorari*, have demanded the attention of this court from a very early period, and are scattered through many of its decisions, so that, under the law as it had been settled, before the passage of the act of 12th February, 1850,

the courts could experience but little difficulty with regard to them.

As early as 1822, it was held, that the trial in the Circuit Court must be on the record sent up by the Justice of the Peace, and not *de novo* before a jury. Ala. Rep. 99. At the January Term, 1830, the court advanced one step further in settling the practice, and in Durham v. Carter & Carroll, 2 Stew. 497, it was held, that the trial must be on errors assigned in the record. In Aldridge v. Hightower, 4 Por. 418, still further progress was made, and it was held, that, if the party removing the cause to the Circuit Court by *certiorari*, failed to assign errors, the judgment of the Justice should be affirmed. This rule is again laid down in Bell v. Killcrease, 11 Ala. Rep. 685, and may now be regarded as the settled rule for the government and disposal of all cases of this class, which are not within the influence of the provisions of the act of 12th February, 1850, above referred to.

It is perfectly clear, that if the new rule established by the act of 1850 does not apply to this case, the court below committed a fatal mistake, in refusing to require Mahan to assign errors, as requested by the counsel of Lester, and in not entering a judgment of affirmance on his failure to do so.

The Circuit Court, however, decided that the cause must be tried under the act of 1850, and although the record shows that Lester, by his counsel, objected to this ruling, yet it appears that instead of suffering his suit to be dismissed by the court for his refusal to proceed in it, as he might safely have done, he entered into the trial *de novo*, and succeeded in obtaining a verdict and judgment.

During the progress of the trial *de novo* in the Circuit Court, the defendant excepted to the ruling of the court on several points shown in the bill of exceptions, but as that proceeding was, in our opinion, wholly unauthorized and irregular, and the judgment in it essentially different from the one which the law would pronounce, we deem it unnecessary to examine the rulings of the court with regard to the testimony.

The act of 1850 (session acts 81) could not, from the nature of the provisions contained in it, have been intended by the General Assembly to apply to any case which had been de-

cided by a Justice of the Peace, and brought into the Circuit Court by *certiorari*, before its passage. The first section of the act provides, that after its passage, "all cases of forcible entry and detainer, forcible detainer, and unlawful detainer, which may be removed to any Circuit or *County* Court pursuant to law, shall be tried *de novo*," &c. The second section provides, "that any person agrieved by the judgment of any Justice of the Peace, or the verdict of a jury trying such cause, shall have the right of appeal to the next Circuit or *County* Court sitting for the county in which such cause may have been pending," &c. In the third section this language is employed: "That in every such case hereafter to be tried, it shall not be the duty of the Justice to make out a complete record of the proceedings," &c.

When these several provisions are taken together, they seem to exclude the idea that they were intended to be applied to any causes except such as are tried before the Justice, according to them. Before the passage of this act, the Justice was required to make a record of the proceedings before him, and of so much of the evidence as was objected to; no appeal was allowed, and the *County* Court had no jurisdiction whatever, (Clay's Dig. 253, § 18; 2 Stew. 496); but in the cases intended to be included in this act, that Court has concurrent jurisdiction with the Circuit Court. Doubtless the Legislature intended to provide a rule for such cases as might arise, or find their way into the Circuit and County Courts after its passage, and not to regulate the manner of proceeding in those already pending in the Circuit Court.

But it is insisted that this cause cannot be regarded as having been pending in the Circuit Court at the passage of the act of 1850, and consequently was rightly subjected to its provisions in the form and manner of trial. This is predicated on the supposition, that although the petition was presented to the Circuit Court Judge, and his *fiat* obtained for the *certiorari*, and both the petition and *fiat* were filed with the clerk before the passage of the act, yet the bond was not executed, nor the writ of *certiorari* issued, until ten days after its passage, and that, until the *bond* was given, the case was not in the Circuit Court.

It may be replied, that the bond, on the execution of which

so much stress is placed in the objection, is not required by the statute, and consequently its execution is neither indispensable nor necessary to give the Circuit Court jurisdiction. Whether a bond shall be given or not, is left to the discretion of the Judge granting the *fiat* for the writ of *certiorari*. Clay's Dig. 251, § 18; Childress v. McGehee, Ala. Rep. 131.

But in this case, other considerations show conclusively that the jurisdiction of the Circuit Court had attached before the passage of the act. The petition had been presented to the Judge, his *fiat* obtained, and these filed with the Clerk of the Circuit Court, before the approval of the law. These are the incipient steps necessary, in cases of this kind, to call the jurisdiction of that court into action; it attached the moment the *fiat* was granted by the judge, and was rendered complete and active by the execution of the bond, and issue of the writ of *certiorari* and notice; the former to bring up the record, and the latter to bring in the opposite party. These relate back to the petition and *fiat*, and thus fix the period at which the suit may be said to have been pending in the Circuit Court, at the point of time when the first legally authorized steps were taken to bring up the record, or in other words, when the petition was presented and the *fiat* of the Judge obtained.

The act of 1850 is not the law regulating the proceedings of this case, and so far as any were had under it, they were wholly irregular, and cannot be allowed to effect detrimentally the rights of the parties. The unwilling acquiescence of Lester in the trial *de novo*, will not render it regular, and consequently the judgment rendered in it, founded, as it appears by the record to be, on the *verdict of the jury*, cannot be supported. The only judgment which the court could have rightfully rendered, must have been founded alone on the record sent up by the Justice of the Peace, and could have been none other than one of affirmance or reversal, on errors assigned.

In the court below, the plaintiff moved to dismiss the case for the want of an assignment of errors, which was refused, and as it appears by the record, the court, without any further action of either party, but *mero motu*, directed a jury to come, and a trial *de novo* to be had. The motion to dismiss

was rightly refused. The judgment of the court, in case the party bringing the cause into it refused or failed to assign errors, should not have been one of *dismissal*, but of *affirmance* for the want of assignment of errors. 11 Ala. Rep. 685. The case, then, stands as though no order had been taken in it in the Circuit Court, except the judgment, which is irregular and erroneous, and it must be remanded to that court, that it may be proceeded in according to the law as it is declared in this opinion.

Let the judgment be reversed, and the cause remanded.